**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-60014
_____


ROWAN COMPANIES, INC.,

                              Plaintiff-Appellee,

          VERSUS

          TIMOTHY MILLER,

                              Defendant-Appellant,


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


_____

No. 98-60475
_____


ROWAN COMPANIES, INC.,

                              Plaintiff-
                              Counter Defendant-
                              Appellee,

               VERSUS

          TIMOTHY MILLER,

                              Defendant-
                              Counter Claimant-
                              Appellant.


_____

Appeals from the United States District Court
for the Southern District of Mississippi
(4:96-CV-60-W-S, & 4:96-CV-60)
_____

May 4, 1999

Before SMITH, WIENER, and PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Timothy Miller appeals the dismissal of his claim of hostile work environment under title VII and his supplemental state-law claim of intentional infliction of emotional distress ("i.i.e.d.").[1] Agreeing with the district court that no reasonable jury could find for Miller on either claim, we affirm.

I.

A.

At the close of Miller's case, his former employer, defendant Rowan Companies, Inc. ("Rowan"), moved for judgment as a matter of law ("j.m.l.") under FED. R. CIV. P. 50, which provides that

> [i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under controlling law be maintained or defeated without a favorable finding on that issue.

We review the district court's decision *de novo*. *Burch v. Coca-Cola Co.*, 119 F.3d 305, 313 (5th Cir. 1997)*, cert. denied*, 118 S. Ct. 871 (1998). We affirm if we conclude that there is insufficient evidence to create a fact question for the jury.

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The defendant company initiated this as a declaratory judgment action to establish its maintenance and cure obligations; Miller counterclaimed on the basis of the issues discussed in this opinion.

*Conkling v. Turner*, 18 F.3d 1285, 1300-01 (5th Cir. 1994). "If the facts and inferences point so strongly and overwhelmingly in favor of the moving party . . . that reasonable jurors could not have arrived at a contrary verdict, then [we] will conclude that the motion should have been granted." *Burch*, 119 F.3d at 313.

## B.

Miller, a black former police officer, was hired by Rowan in July 1994 as a roustabout assigned to Rig 38, an offshore drilling facility in the Gulf of Mexico. Although he got along well with the crew and was promoted to floorman (with a corresponding pay increase) in seven months, Miller claims that he was subjected to racially derogatory comments. Two crewmen, George Szemborski and Don Rutan, held themselves out as Klansmen and invited Miller to their purported KKK meetings. Miller responded by greeting his white coworkers with the "power salute"SSan arm gesture indicating "power to the people." In similar fashion, when told of an incident in Vidor, Texas, in which a black family's home had been burned down because "niggers" are not welcome there, Miller indicated an interest in moving there. Wilson reported none of this banter to his supervisors.

In March 1995, Miller found an envelope, anonymously put into his locker by Szemborski and Rutan, containing a piece of rope tied like a noose and a hand-written note stating "wear this to the party tonight." Miller told his supervisor, Kirkpatrick, about this incident, whereupon Kirkpatrick indicated support for Miller

3

and told him not to worry about it. Miller then reported this incident to another one of his supervisors, Ramage, who asked Miller whether he had been bothering anybody. When Miller indicated that he had not, Ramage remarked that all this "horseplay" had to be cut out. He then untied the rope and threw it out.

Hearing how upset he had become over the incident, several of Miller's white coworkers came forward and spoke words of support and encouragement to him. Dick Cain, the night tool pusher, told Miller that he would put a stop to such incidents. Even Szemborski and Rutan came forth and admitted their wrongdoing to Miller, explaining that the whole matter was intended as a "joke."

Miller accepted their apologies, and his work thereafter continued without incident. Miller claims, however, to have suffered nightmares about the event. When he reported this to the Vice President of Industrial Relations, Bill Person, his claim was met with surprise; Person said that the incident "shouldn't have affected" a former police officer such as Miller.

While visiting his parents during two weeks off between shifts, Miller mentioned the March 21 incident. His father contacted the local chapter of the NAACP, which sent a letter to Rowan complaining of the affair.

Upon returning to work, Miller was contacted by Dereck Necaise, the rig manager, who requested a private meeting with him, at which Necaise offered to transfer Szemborski and Rutan to another rig if Miller was uncomfortable working with them. Miller

4

instead requested to be transferred, and his wish was granted.

Miller's tenure on his new rig was without incident. Explaining, however, that he was still upset by it, Miller requested and was granted a paid leave of absence.

Rowan's independent investigation of the incident led it to conclude that it was an isolated breach of company policy. Szemborski and Rutan were counseled and fined two weeks' pay as punishment; each was informed that repetition of such conduct would result in termination. Necaise was counseled regarding Rowan's anti-discrimination policy, and a written notice was issued to all employees reminding them that horseplay and racial discrimination would not be tolerated and could result in immediate suspension or termination.

Necaise met with Miller during the leave of absence and apologized for the incident. He assured Miller that the occurrence was a violation of company policy that would not happen again and requested that Miller return to work. Miller declined and is currently pursuing a career in health care.

## II.

### A.

A title VII hostile work environment claim requires that (1) plaintiff belongs to a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was racially motivated; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about

5

the harassment and failed to take prompt remedial action. *See Long v. Eastfield College,* 88 F.3d 300, 309 (5th Cir. 1996). As the district court correctly noted, Miller has failed to establish the possibility of the fifth element.

Regarding Rowan's notice, in the words of the district court: "[T]he incident in question was isolated, unannounced, and not preceded by any conduct brought to the attention of the defendant." *See Jones v. Flagship Int'l*, 793 F.2d 714, 720 (5th Cir. 1986). Regarding remedial action, Rowan docked the perpetrators (Szemborski and Rutan) two weeks' pay, issued written warnings to all crewmen, and instructed supervisory personnel on the gravity of Miller's plight. Rowan offered to remove either Miller or the perpetrators from the rig, depending on Miller's preference. Finally, the culprits personally apologized to Miller, explained that they were only joking, and Miller accepted their apologies and explanations as such. The court was correct in holding that this constituted prompt remedial action as a matter of law. *See, e.g., Carmon v. Lubrizol Corp.,* 17 F.3d 791, 793-95 (5th Cir. 1994) (finding prompt remedial action).

## B.

The elements of a claim of i.i.e.d., under Mississippi law, are that (1) plaintiff was subjected to conduct by defendant's employees that was "so outrageous in character, and extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

6

community," *Wong v. Stripling*, 700 So. 2d 296, 306 (Miss. 1997); (2) the conduct proximately caused plaintiff severe emotional distress; (3) defendant intended to inflict severe emotional distress or knew or was substantially certain that severe emotional distress would result; and (4) defendant's employees were acting in the course and scope of their employment, and the conduct was ratified by the defendant, *Tichenor v. Roman Catholic Church*, 32 F.3d 953, 959 n.21 (5th Cir. 1994). The defendant is Rowan, not Szemborski and Rutan. Miller has failed to adduce evidence from which a reasonable jury could find that Rowan either "intended to inflict severe emotional distress," "knew or was substantially certain that severe emotional distress would" befall Miller, or "ratified" the offensive conduct in question. *See, e.g., Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 659 (Miss. 1995) (finding that defendant's *bona fide* remedial efforts precluded a finding of intentional infliction of emotional distress). Under the totality of circumstances, Rowan's response to Miller's plight has been responsible, fair, and arguably aggressive and by no means evinced improper intent or ratification.

The district court issued a fine opinion explaining all this. The judgment is AFFIRMED.